**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| NEURAL AI, LLC,<br><br>Petitioner,<br><br>v.<br><br>X.AI CORP,<br><br>Respondent. | Misc. Case No. 7:26-cv-00319<br><br>Principal case pending in Western District of Texas, Civil Action No. 7:24-cv-00221-LS-DTG |

**NEURAL AI'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY X.AI CORP.**

# TABLE OF CONTENTS

I. FACTUAL BACKGROUND ........................................ 2

A. The Underlying Litigation ........................................ 2

B. The Rule 45 Subpoena to xAI and xAI's Initial Objections ........................................ 3

C. NAI's Meet-and-Confer Efforts and xAI's Continued Non-Compliance ........................................ 4

II. THE COURT HAS JURISDICTION BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN, TX IS PROPER. ........................................ 5

III. XAI MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA. ........................................ 6

A. The Requested Discovery Goes to the Heart of NAI's Infringement Claims ........................................ 6

B. xAI Has Not Substantiated Burden and NAI Offered Narrower Alternatives ........................................ 9

IV. CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*611 Carpenter LLC v. Atlantic Casualty Ins. Co*.,
2024 WL 1977160 (W.D. Tex. April 30, 2024) ....................6, 9

*Conservation L. Found., Inc. v. Equilon Enters. LLC*,
2025 WL 2821238 (D.R.I. Oct. 3, 2025) ....................5

*FG SRC LLC v. Xilinx, Inc*.,
2022 WL 22997130 (D. Del. Apr. 11, 2022) ....................8

*Flores v. Lowes Home Centers, L.L.C.*,
2023 WL 3959399 (W.D. Tex. June 12, 2023) ....................6

*Kim v. NuVasive, Inc*.,
2011 WL 3844106 (S.D. Cal. Aug. 29, 2011) ....................8

*Lucent Technologies, Inc. v. Gateway, Inc*.,
580 F.3d 1301 (Fed. Cir. 2009) ....................8

*Meritage Homes, LLC v. AIG Specialty Ins. Co.*,
2024 WL 221448 (W.D. Tex. Jan. 18, 2024) ....................5

*Neural AI, LLC v. NVIDIA Corp*.,
Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.) ....................1, 2, 3

*Phila. Indem. Ins. Co. v. Odessa Family YMCA*,
2020 WL 6484069 (W.D. Tex. June 26, 2020) ....................5

*Trs. of Bos. Univ. v. Everlight Elecs. Co.*,
2014 WL 12792496 (D. Mass. Sept. 8, 2014) ....................5

*Velocity Pat. LLC v. FCA US LLC*,
2017 WL 11893112 (N.D. Ill. Nov. 2, 2017) ....................5

*Waller v. Jet Specialty, Inc.*,
2024 WL 7050192 (W.D. Tex. Nov. 19, 2024) ....................6

**Rules**

Fed. R. Civ. P. 26 ....................6

Fed. R. Civ. P. 26(b)(1) ....................6

Fed. R. Civ. P. 34 ....................10

Fed. R. Civ. P. 45 .......... 1, 3, 6

Fed. R. Civ. P. 45(c)(2)(A) .......... 5

Fed. R. Civ. P. 45(d)(2)(B)(i) .......... 5, 6

This motion arises from *Neural AI, LLC v. NVIDIA Corp*., Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.) (the "Underlying Action"), a patent-infringement action pending in this District. Plaintiff Neural AI, LLC ("NAI") alleges that Defendant NVIDIA Corporation ("NVIDIA") infringes through its GPU-accelerated hardware and software: U.S. Patent No. 8,648,867 (the "'867 Patent"), Reissue Patent No. RE48,438 (the "'438 Patent"), and Reissue Patent No. RE49,461 (the "'461 Patent") (collectively, the "Asserted Patents"). *See* Exhibits 1–4.

NVIDIA has made customer deployment central to the Underlying Action. It disputes whether customers configure and use the accused products as NAI alleges and contends that NAI must obtain customer evidence to prove indirect infringement and its extent. Respondent x.AI Corp. ("xAI") is a major NVIDIA customer and end user, therefore possesses evidence NVIDIA says NAI must obtain. *See* Exhibits 13–15.

NAI served xAI on June 25, 2026 with Rule 45 subpoenas for targeted documents and corporate testimony concerning xAI's configuration, integration, and use of NVIDIA GPUs and software. *See* Exhibits 5–6. xAI objected to every request and deposition topic and refused to produce documents or designate a witness. *See* Exhibit 9. NAI met and conferred beginning July 24, 2026, supplied focused technical questions and a draft declaration on August 4, and invited xAI to propose revisions or provide equivalent information in lieu of broader discovery. *See* Exhibits 10–12. After further conferences, xAI said it was considering a declaration but never sent proposed edits or made any concrete commitment. NAI advised xAI on August 11 that NVIDIA had extended the deadline for third-party discovery motions to August 18 and asked for edits promptly. xAI said it was "working through the issues," but never substantively responded. *See* Exhibit 19 at 1–2; Laiche Decl. ¶¶ 24–25. NAI therefore respectfully requests an order compelling xAI to produce documents responsive to Requests 1–12 on a rolling basis by dates certain and to designate and

produce a knowledgeable witness on Deposition Topics 1–5.

# I. FACTUAL BACKGROUND

## A. The Underlying Litigation

The Underlying Action involves direct, indirect, and induced infringement claims concerning claims 16–19 of the ’867 Patent; claims 1, 3–6, 8–9, 12, 14, 17–18, 21–23, 29–30, 32, 40, 43–44, 46, 48, 51–52, and 55–57 of the ’438 Patent; and claims 21–25 and 27–30 of the ’461 Patent (collectively, the “Asserted Claims”). *See* Exhibits 1, 7. The Asserted Patents teach GPU-accelerated computing systems and methods. See Exhibits 2–4.

NAI’s January 20, 2026 Final Infringement Contentions and the Subpoenas identify integrated combinations of NVIDIA hardware—including GPUs, super computers and servers—and GPU-accelerated software, including CUDA, cuDNN, TensorRT, and higher-level frameworks, as the Accused Products. *See* Exhibit 7 at 2–9. NAI alleges NVIDIA encourages customers to combine, configure, and use those products in an infringing manner. *See id.* at 12–13.

NVIDIA disputes that selling the Accused Products proves customers configure and deploy them as NAI alleges. Although NVIDIA admits it sells the products, partners with resellers, managed-service providers, and data-center providers, and supports customers and partners, it denies infringement and disclaims knowledge of customer use. *See* Exhibit 8 ¶¶ 18, 20–23, 87, 131, 171. NVIDIA has stated throughout discovery that NAI must seek evidence of actual deployment from customers and end users. Laiche Decl. ¶ 22. Customer evidence is therefore directly relevant to NAI’s infringement claims.

xAI is one of NVIDIA’s largest customers and end users of the Accused Products. xAI built Colossus—the world’s largest AI supercomputer—with 100,000 NVIDIA Hopper GPUs and the NVIDIA Spectrum-X Ethernet networking platform, is expanding it to 200,000 GPUs, and has

publicly touted NVIDIA's Hopper GPUs and Spectrum-X. *See* Exhibit 13. NVIDIA's Q3 FY2025 results likewise highlighted that it accelerated xAI's Colossus cluster using 100,000 Hopper GPUs and Spectrum-X. *See* Exhibit 15 at 2. Elon Musk also publicly stated that SpaceX and xAI are committed to using NVIDIA GPUs exclusively and called NVIDIA's Vera Rubin NVL72 "the best AI computer." *See* Exhibit 14 at 1. xAI's records concerning the configuration, deployment, and use of those products bear directly on whether the Accused Products are used in an infringing manner and whether NVIDIA induced or contributed to that use.

NAI has subpoenaed NVIDIA customers for evidence uniquely within their possession. Document discovery in the Underlying Action closed August 11, 2026, deposition discovery closes September 16, 2026, and NVIDIA agreed to extend NAI's deadline to file third-party discovery motions through August 18, 2026. *See Neural AI, LLC v. NVIDIA Corp.*, Case No. 7:24-cv-00221-LS-DTG, Dkt. 181 (W.D. Tex.); Laiche Decl. ¶ 25.

**B. The Rule 45 Subpoena to xAI and xAI's Initial Objections**

NAI served xAI on June 25, 2026 with Rule 45 subpoenas for documents and corporate testimony, designating Austin, Texas as the place of compliance. *See* Exhibits 5–6. The document subpoena contains twelve targeted requests and the accompanying deposition subpoena contains five topics, all directed to xAI's configuration, integration, and use of NVIDIA GPUs and related software. *See* Exhibit 5.

Both subpoenas are limited to September 13, 2018 to the present and to U.S.-based activity or activity supporting or directed toward U.S. operations. *Id.* xAI's responses were due July 9, 2026. At xAI's request, NAI extended the deadline to July 17. *See* Exhibit 10 at 8.

xAI then objected to every document request and deposition topic on boilerplate grounds—including undue burden, overbreadth, vagueness, lack of proportionality, confidentiality, and lack

of a time frame—and stated for each request that it "will not produce documents" and for each topic that it "will not produce a witness." See Exhibit 9.

### C. NAI's Meet-and-Confer Efforts and xAI's Continued Non-Compliance

NAI began meeting and conferring with xAI on July 24, 2026. NAI explained the targeted discovery, identified the xAI systems and NVIDIA products implicated, and discussed categories likely to satisfy the requests. xAI said it was still investigating, needed technical personnel, and objected generally to breadth and confidential technical information. *See* Exhibits 9, 10.

On August 4, NAI supplied focused technical questions concerning the NVIDIA GPUs, libraries, frameworks, and services xAI deploys; xAI's configurations and data paths; memory allocation and reuse; and runtime compilation and TensorRT. *See* Exhibit 11. NAI also supplied a draft declaration and offered to consider an executed declaration, revised by a knowledgeable xAI representative after a reasonable investigation, in lieu of broader document production and deposition testimony, subject to resolving material gaps. *See* Exhibits 10, 12.

The parties continued conferring on or around August 6, but made no progress. xAI provided no substantive answers and would not commit to a declaration with sufficient specificity. On August 6, xAI's counsel said that "my client is considering a declaration based on what we've found" and might "come back with a proposal." *See* Exhibit 19; Laiche Decl. ¶ 24.

On August 11, NAI told xAI that NVIDIA had agreed to extend the deadline for third-party discovery motions through August 18, asked xAI to send proposed declaration edits "as soon as possible," and explained that NAI would file to preserve its rights while remaining willing to withdraw the motion if the dispute were resolved. *See* Exhibit 19 at 2; Laiche Decl. ¶ 25. xAI's counsel responded only to say that "[w]e are working through the issues with our client and will revert shortly once we have their feedback." *See* Exhibit 19 at 1. But xAI never followed up, has

not produced documents, designated a witness, answered NAI's questions, proposed declaration revisions, or committed to any date for compliance. *See* Exhibit 19; Laiche Decl. ¶¶ 24–25. NAI therefore seeks court intervention.

## II. THE COURT HAS JURISDICTION BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN, TX IS PROPER.

Rule 45(d)(2)(B)(i) directs a party seeking to compel compliance to apply to "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Meritage Homes, LLC v. AIG Specialty Ins. Co.*, 2024 WL 221448, at *4 (W.D. Tex. Jan. 18, 2024); *Phila. Indem. Ins. Co. v. Odessa Family YMCA*, 2020 WL 6484069, at *1 (W.D. Tex. June 26, 2020). The subpoenas designate Lexitas Legal, 100 Congress Ave., Ste. 2000, Austin, Texas 78701, within this District, as the place of compliance.

Rule 45(c)(2)(A) permits document production "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." The issuing party is not limited to selecting a place of compliance within 100 miles of the recipient's headquarters. *See, e.g., Conservation L. Found., Inc. v. Equilon Enters. LLC*, 2025 WL 2821238, at *1 (D.R.I. Oct. 3, 2025); *Trs. of Bos. Univ. v. Everlight Elecs. Co.*, 2014 WL 12792496, at *3 (D. Mass. Sept. 8, 2014); *Velocity Pat. LLC v. FCA US LLC*, 2017 WL 11893112, at *4 (N.D. Ill. Nov. 2, 2017) (holding that the place of compliance was proper within 100 miles of any of the subpoena target's regional offices or facilities and rejecting argument that, "regardless of its other locations," its headquarters was the "only location where it stores" requested documents).

Austin satisfies the Rule. xAI subleases roughly 112,000 square feet at the Seaholm Power Plant in downtown Austin; xAI, Tesla, and SpaceX announced a $20 billion Terafab facility on Tesla's campus in Eastern Travis County; xAI's registered agent is at 5301 Southwest Parkway, Suite 400, Austin; and xAI lists open positions for employment in Austin and Bastrop. *See* Exhibits

6, 16–18. The designated place of compliance is therefore proper, and this Court has jurisdiction to resolve the motion.

## III. XAI MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA.

Federal Rule of Civil Procedure 26 permits discovery of any nonprivileged matter relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "At the discovery stage, relevancy is broadly construed." *Flores v. Lowes Home Centers, L.L.C.*, 2023 WL 3959399, at *2 (W.D. Tex. June 12, 2023). "'[A] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.'" *Id.*

Where, as here, a non-party refuses discovery in response to a validly issued subpoena, Federal Rule of Civil Procedure 45 provides the Court for the district where compliance is required with broad discretion to compel the production of documents and information from third parties. Fed. R. Civ. P. 45(d)(2)(B)(i). Once a party moving to compel discovery establishes that the materials are relevant, "[t]he party opposing discovery bears the burden of stating 'with specificity the grounds for objecting to the request.'" *Waller v. Jet Specialty, Inc.,* 2024 WL 7050192, at *1 (W.D. Tex. Nov. 19, 2024); *see also 611 Carpenter LLC v. Atlantic Casualty Ins. Co*., 2024 WL 1977160, at *1 (W.D. Tex. April 30, 2024) (granting party's motion to compel non-party subpoena). The non-party "must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is overly broad and burdensome." *611 Carpenter*, 2024 WL 1977160, at *1.

### A. The Requested Discovery Goes to the Heart of NAI's Infringement Claims.

NVIDIA has made customer deployment a disputed issue. It contends that selling the Accused Products does not prove customers configure and use them as NAI alleges and says NAI

must obtain customer evidence to prove infringement and its extent. xAI is a major customer and end user. It operates Colossus with 100,000 NVIDIA Hopper GPUs and Spectrum-X, is expanding to 200,000 GPUs, and has publicly committed to exclusive use of NVIDIA GPUs. *See* Exhibits 13–15. xAI's records and testimony can show whether and how often the asserted methods are actually performed in a real-world system.

The requested information is also uniquely within xAI's possession. NVIDIA may know what it designed and distributed, but according to NVIDIA, only xAI knows what it selected, configured, deployed, and actually ran. NVIDIA claims it does not possess xAI's internal architecture diagrams, environment configurations, profiler traces, or memory-allocation records, and NVIDIA has repeatedly disclaimed meaningful insight into customer deployments. *See* Laiche Decl. ¶ 23. At a discovery hearing, NVIDIA told the Court that NAI would need to seek real-world deployment information from its customers and end users. *See* Laiche Decl. ¶ 22. NAI has done so.

**The twelve document requests** track the accused computation from software selection through input, execution, memory, and output to establish infringement. *See* Exhibit 5.

- **Requests 1–4** seek documents sufficient to identify the software, frameworks, libraries, APIs, scripts, configurations, and custom code xAI uses on NVIDIA GPUs; the NVIDIA software and sample code it uses; and how xAI calls, interfaces with, wraps, depends on, modifies, or extends that functionality. They show which accused products xAI deployed and whether xAI used them as provided and intended or materially modified them.

- **Requests 5–6** seek architecture, design, data-flow, control-flow, and execution-flow materials and documents showing whether the relevant computations involve neural networks, layers, and outputs used as inputs to later neurons or layers. They show whether xAI's systems perform the claimed GPU-accelerated operations and how the accused hardware and software work together as relevant to the Asserted Claims.

- **Requests 7–10** address the claimed memory and data paths: pointer, buffer, and intermediate-result reuse; GPU-memory allocation or partitioning; movement of inputs from CPU, host, storage, sensor, camera, or network sources into GPU memory; and storage, transfer, accumulation, reuse, or return of outputs and intermediate results. They target the memory-management and data-transfer limitations at the heart of the Asserted Claims.

- **Requests 11–12** seek documents sufficient to show how GPU computations are scheduled, ordered, queued, synchronized, parallelized, launched, interrupted, resumed, and executed, and how inputs, commands, model or parameter changes, interruptions, or output changes affect GPU-queue placement. They target the claimed coordination and control of GPU computations.

These requests thus target whether xAI's systems perform the asserted method steps and whether NVIDIA's software, instructions, and support cause or encourage that use. *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321–22, 1333-34 (Fed. Cir. 2009) (a patentee must show all steps of a claimed method were performed to prove indirect infringement and damages "ought to be correlated, in some respect, to the extent the infringing method is used by" directly infringing third parties); *FG SRC LLC v. Xilinx, Inc.*, 2022 WL 22997130, at *5 (D. Del. Apr. 11, 2022) ("[I]t is clear that SRC has a need for information from third parties demonstrating that the parties practice the asserted claims."); *Kim v. NuVasive, Inc.*, 2011 WL 3844106, at *3 (S.D. Cal. Aug. 29, 2011) ("The Court finds the information sought in the subpoenas is relevant to NuVasive's claim of induced infringement and damages therefrom").

The requests are also bounded and particular. Each seeks only documents "sufficient to show" an identified technical fact. The Subpoena is limited to September 13, 2018 to the present and to U.S.-based or U.S.-directed activity. It does not seek every document mentioning NVIDIA, a wholesale source-code production, or information about products xAI does not use.

**The five deposition topics** seek testimony on the same subjects as the document requests and directs xAI to designate one or more knowledgeable persons on five topics. *See* Exhibit 5.

- **Topic 1**: the NVIDIA software and libraries xAI uses to perform computations on NVIDIA GPUs;
- **Topic 2**: NVIDIA sample source code xAI uses, in whole or in part;
- **Topic 3**: xAI's customizations and data inputs that alter how NVIDIA software performs computations;

- **Topic 4**: identification of xAI software that uses NVIDIA GPUs to perform computations; and
- **Topic 5**: how output and intermediate GPU results are stored, referenced by pointers, transferred, copied, streamed, written back, returned, accumulated, reused, or otherwise made available between GPU memory and CPU, host, system, storage, display, network, or other memory locations.

The testimony is proportional because it is limited to five topics tracking the twelve requests, the same defined period, and the same U.S. nexus, and NVIDIA claims it cannot supply xAI's internal configuration or operating practices.

NAI also offered the draft declaration as a less burdensome alternative and said it would consider an executed declaration in lieu of document production and testimony, subject to resolving material gaps. *See* Exhibits 10, 12. xAI never accepted that off-ramp or provided other equivalent discovery.

The information is central to the issues in dispute, uniquely within xAI's possession, and sought through targeted, time-limited requests and topics. xAI should be compelled to produce it.

**B. xAI Has Not Substantiated Burden and NAI Offered Narrower Alternatives.**

xAI's written objections do not state with specificity the burden associated with any request or topic. See *611 Carpenter LLC*, 2024 WL 1977160, at *1. xAI repeated the same boilerplate objections across all twelve requests and five topics and then refused to produce documents or designate a witness. *See* Exhibit 9. Boilerplate objections unsupported by evidence of burden do not establish undue burden or outweigh the relevance of the discovery sought.

xAI's time-frame objection is meritless: the subpoenas expressly run from September 13, 2018 to the present and are limited to U.S.-based or U.S.-directed activity. *See* Exhibit 5. Its objections to "NVIDIA GPUs" likewise does not show burden. The definition tracks the scope of the Accused Products identified in NAI's infringement contentions, and the requests seek documents "sufficient to show" facts about products xAI actually deploys. *See* Exhibits 5, 7, 9.

That formulation is standard under Rule 34 and reduces burden by permitting xAI to choose the most efficient means of demonstrating each fact.

NAI minimized burden by agreeing to extend xAI's response deadline, identifying implicated products and systems, supplying focused technical questions, offering a draft declaration as an alternative to broader production and testimony, and inviting xAI to identify specific burdens. *See* Exhibits 10–12. xAI has offered no concrete search, production date, revised declaration, or witness and has provided nothing responsive. *See* Laiche Decl. ¶ 24. NAI should not be required to accept an open-ended investigation in place of the discovery NVIDIA says NAI must obtain.

Further, NAI bent over backward to minimize xAI's burden. NAI first spent months pursuing this information directly from NVIDIA, turning to third-party discovery only after NVIDIA repeatedly represented that it lacked information concerning how customers and end users deploy its accused hardware and software. xAI has objected, promised to investigate, and followed through on nothing. *See* Laiche Decl. ¶¶ 24–25.

## IV. CONCLUSION

For the foregoing reasons, NAI respectfully requests that this Court (1) compel xAI to produce nonprivileged documents responsive to Requests for Production Nos. 1–12 on a rolling basis to begin within 7 days of the Court's order and to complete production within twenty-one (21) days of the Court's order, and (2) compel xAI to designate and produce a knowledgeable witness on Deposition Topics 1–5 within thirty (30) days of the Court's order.

Dated: August 17, 2026

Respectfully submitted,

*<u>/s/ Rocco Magni</u>*
Max L. Tribble
Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni
Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
WA State Bar 60450
401 Union Street, Suite 3000
Seattle, WA 98101
tlaiche@susmangodfrey.com

*Attorneys for Petitioner Neural AI, LLC*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on August 17, 2026, a true and correct copy of the foregoing document was served on counsel for X.AI Corp. and all counsel of record in the underlying action.

*/s/ Rocco Magni*
Rocco Magni

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for Neural AI, LLC conferred in good faith with counsel for non-party X.AI Corp. regarding the issues raised in this Motion, including through Zoom conferences on or about July 24 and August 6, 2026, and related email correspondence. Despite those efforts, the parties were unable to resolve the dispute.

*/s/ Rocco Magni*
Rocco Magni